UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER CHIYERE ALIKAH,<br><br>            Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL SECURITY,[1]<br><br>            Defendant. | Case No. 1:22-cv-01028-CDB (SS)<br><br>ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT<br><br>(Docs. 17, 18) |

Plaintiff Christopher Chiyere Alikah ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for disability benefits under the Social Security Act ("SSA" or "Act"). (Doc. 1). The matter is before the Court on the Administrative Record (Doc. 15, hereinafter "AR") and the parties' briefs (Docs. 17, 18), which were submitted without oral argument.[2] The Court finds and rules as follows.

///

---

[1] On May 7, 2025, Frank Bisignano was named Acting Commissioner of the Social Security Administration. *See* https://blog.ssa.gov/financial-services-industry-leader-frank-bisignano-to-be-the-18th-commissioner-of-social-security/ (last visited May 13, 2025). He therefore is substituted as the Defendant in this action. *See* 42 U.S.C. § 405(g) (referring to the "Commissioner's Answer"); 20 C.F.R. § 422.210(d) ("the person holding the Office of the Commissioner shall, in [their] official capacity, be the proper defendant.").

[2] On August 24, 2022, after both parties consented to the jurisdiction of a magistrate judge for all further proceedings in this action, including trial and entry of judgment, the matter was reassigned pursuant to 28 U.S.C. § 636(c)(1). (Doc. 12).

1   I.      **BACKGROUND**

2           **A.      Administrative Proceedings and ALJ's Decision**

3           On May 29, 2020, Plaintiff filed an application for a period of disability, disability insurance

4   benefits, and for Supplemental Security Income (SSI) benefits with an alleged onset date of

5   November 1, 2019.  (Doc. 1 ¶ 6); (AR 214-27).  Plaintiff's claim was initially denied on July 9,

6   2020, and again upon reconsideration on November 18, 2020.  (AR 128-32, 140-46).  Plaintiff

7   requested a hearing before an Administrative Law Judge on November 20, 2020.  (AR 147-49).

8   Mary P. Parnow, the Administrative Law Judge ("ALJ"), held a telephone hearing on May 11,

9   2021, wherein Plaintiff and impartial vocational expert Jane Colvin-Roberson both testified.  (AR

10  19, 34-62).  The ALJ issued an unfavorable decision on June 29, 2021, finding Plaintiff was not

11  disabled.  (AR 16-33).  The Appeals Council denied Plaintiff's request for review on June 22, 2022,

12  rendering the ALJ's decision as the final decision of the Commissioner.  (AR 1-6).  Plaintiff

13  subsequently filed this action seeking judicial review of the ALJ's decision.  (Doc. 1).

14          In the decision, the ALJ considered Plaintiff's claims using the five-step sequential

15  evaluation required by 20 C.F.R. § 416.920(a).  (AR 20-29).  The ALJ found Plaintiff met the

16  insured status requirements of the Act through March 31, 2024.  (AR 22).  At step one, the ALJ

17  found that Plaintiff had not engaged in substantial gainful activity since November 1, 2019, the

18  alleged onset date.  (*Id.*).

19          At step two, the ALJ found that Plaintiff has the following severe impairments: post-

20  traumatic stress disorder ("PTSD") and major depressive disorder.  (*Id.*).  The ALJ determined that

21  Plaintiff's medically determinable impairments ("MDIs") significantly limit his ability to perform

22  basic work activities as required by Social Security Ruling ("SSR") 85-28, are more than slight

23  abnormalities, and have more than a minimal effect on Plaintiff's abilities.  (*Id.*).  The ALJ stated

24  that the severity of the impairments are established by the objective medical findings, medical

25  opinions of the treating physicians, laboratory studies, and other medical evidence.  (*Id.*)

26          At step three, the ALJ found that Plaintiff did not have an impairment, or any combination

27  of impairments, that meets or medically equals the severity of one of the listed impairments in 20

28  C.F.R. Part 404, Subpart P, Appendix 1.  (*Id.*).  In making this finding, the ALJ considered whether

the four broad functional areas of mental functioning listed in the "paragraph B" criteria are satisfied.[3]  The ALJ considered Plaintiff's subjective complaints, including having racing thoughts, nightmares, fear of someone out there to get him, inability to focus, and avoiding other people.  The ALJ also considered Plaintiff's conservative treatment with medications and psychotherapy and noted that medical records showed that as long Plaintiff is compliant with his treatment, his mental status examinations were generally within normal limits.  (AR 23) (citing Exs. 1F-6F, 11F, 14F).  The ALJ noted that Plaintiffs' activities of daily living suggest he is more capable than he alleged given his ability to: do some chores; sit on a chair around the table; take naps; eat independently; take his medications independently; somewhat maintain his personal care; do laundry; take out the trash; sweep; go outside; walk; go out alone; drive; shop by computer for clothing, food, and toiletries; manage his own finances; watch television; play video games; listen to music; and spend time with others on the phone and text.  (*Id.*) (citing Ex. 9E).

The ALJ made the following "paragraph B" findings: As to understanding, remembering or applying information, the ALJ found that Plaintiff has a mild limitation; as to interacting with others, the ALJ found that Plaintiff has a moderate limitation; as to concentrating, persisting or maintaining pace, the ALJ found that Plaintiff has a moderate limitation; and as to adapting or managing oneself, the ALJ found that Plaintiff has a mild limitation.  (AR 22).  Because these mental impairments do not cause at least two "marked" limitations or one "extreme" limitation, the

---

[3] The "paragraph B" criteria evaluate mental impairments in the context of four broad areas of functioning: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. 20 C.F.R. § Pt. 404, Subpt. P, App. 1.  The severity of the limitation a claimant has in each of the four areas of functioning is identified as either "no limitation," "mild," "moderate," "marked," or "extreme." (*Id.*).  To satisfy the paragraph B criteria, a claimant must have an "extreme" limitation in at least one of the areas of mental functioning, or a "marked" limitation in at least two of the areas of mental functioning.  (*Id.*).  An "extreme" limitation is the inability to function independently, appropriately, or effectively, and on a sustained basis. (*Id.*).  A "marked" limitation is a seriously limited ability to function independently, appropriately, or effectively, and on a sustained basis. (*Id.*).  A "moderate" degree of mental limitation means that functioning in this area independently, appropriately, effectively, and on a sustained basis is "fair." (*Id.*)  And a "mild" degree of mental limitation means that functioning in this area independently, appropriately, effectively, and on a sustained basis is "slightly limited." (*Id.*); *see Carlos v. Comm'r of Soc. Sec.*, No. 1:21-cv-00517-SAB, 2023 WL 1868870, at *4 n.7 (E.D. Cal. Feb. 9, 2023).

1    ALJ determined that the "paragraph B" criteria are not satisfied.  (AR 23).  The ALJ found that the

2    "paragraph C" criteria[4]  were not met because there is no evidence that Plaintiff's mental disorder

3    is "serious and persistent," no evidence of medical treatment, mental health therapy, psychosocial

4    support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and

5    signs of his mental disorder, nor any evidence of marginal adjustment of minimal capacity to adapt

6    to changes in the environment or to demands that are not already part of Plaintiff's daily life.  (*Id.*).

7           Prior to step four, the ALJ found that Plaintiff has the RFC to perform a full range of work

8    at all exertional levels but with the following non-exertional limitations:

9    
10   [Plaintiff] is precluded from work involving complex and detailed tasks and
     instructions; he remains capable of performing work involving simple, repetitive
     tasks in a routine work environment; he can maintain concentration, persistence and
11   pace for simple, repetitive tasks for an 8-hour workday and a 40-hour workweek,
     with no more than occasional contact with coworkers and the general public.
12   

13   (AR 23-24).  In considering Plaintiff's symptoms and the extent to which these symptoms can

14   reasonably be accepted as consistent with objective medical evidence and other evidence, the ALJ

15   noted she followed the two-step process as set forth in 20 C.F.R. 416.929 and 404.1529 and SSR

16   16-3p and considered the medical opinion(s) and prior administrative medical finding(s) in

17   accordance with 20 C.F.R. 416.920c and 404.1520c.  (AR 24).  In this regard, the ALJ noted the

18   following from Plaintiff's testimony:

19   
20   [Plaintiff's] highest education is a master's degree in theology. He said he last
     worked on October 9, 2019; he was a chaplain. [He] alleged having depression,
     anxiety, and [PTSD] since 14 years old. He explained he has been able to work
21   throughout the years, but it has been challenging. He testified that he experiences
     crying spells, anxiety, and nervousness. He said he experienced his first [PTSD]
22   episode in 2019. He said he had performance issues at work and he was hospitalized
     for depression. For example, he said he had serious absenteeism at work. He stated
23   it has been stressful seeking employment. He said there are days he would not get
     out of bed. He said he was anxious and/or paranoid because he would always watch
24   over his shoulders and feel nervous. He described flashbacks on a nightly basis,
     racing thoughts, and sleepless nights. He mentioned he has difficulty focusing.  He
25   

26   _____
     [4] "Paragraph C," subsection (1) requires a "highly structured setting that is ongoing that
27   diminishes the signs and symptoms of [Plaintiff's] mental disorder."  20 C.F.R. § Pt. 404, Subpt.
     P, App. 1 § 12.04(C)(1).  "Paragraph C," subsection (2) requires that Plaintiff "have minimal
     capacity to adapt to changes in [Plaintiff's] environment or to demands that are not already part of
28   [Plaintiff's] daily life."  (*Id.* at subsection (C)(2)).

denied going to the grocery store.

(AR 24).  The ALJ determined that Plaintiff's hearing testimony did not establish any inconsistency with the ALJ's findings.

Upon consideration of the evidence, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that his statements concerning the intensity, persistence, and limiting effects of symptoms are not entirely consistent with the medical evidence and other record evidence.  (AR 25).  The ALJ considered Plaintiff's activities of daily living ("ADLs") from his Adult Function Reports and statements of record:

> [Plaintiff] stated he lives in a shelter and [he could] do some chores; sit on a chair around the table; take naps; eat independently; take his medications independently; somewhat maintain his personal care; do laundry; take out the trash; sweep; go outside; walk; go out alone; drive; shop by computer for clothing, food, and toiletries; manage his own finances; watch television; play video games; listen to music; and spend time with others on the phone and text.

 (AR 23) (citing Ex. 9E).  The ALJ determined that Plaintiff's ADLs suggest he is more than capable in his ability with talking, remembering, completing tasks, concentrating, and getting along with others than he alleged.  (AR 24).  From review of a Third Party Adult Function Report of Plaintiff's friend, Rowena Ross, statements of which mirrored Plaintiff's allegations, the ALJ discounted the lay opinion as unsupported by the medical evidence and assessed the opinion of only limited weight.  (*Id.*) (citing Ex. 5E).

The ALJ considered Plaintiff's medical history, including medical records dated prior to the relevant time period in making the RFC determination.  The ALJ found the medical records show Plaintiff sought mental health treatment for his diagnoses of depression, anxiety, and/or PTSD.  (*Id.*) (citing Exs. 1F, 2F, 4F, 9F, 11F).  The ALJ found Plaintiff's Global Assessment of Functioning ("GAF") scores to be of limited evidentiary value as the GAF score "as a method of evaluating the severity of impairments" has "been specifically rejected by the Social Security Administration."  (*Id.*) (citing 65 Fed. Reg. 50746, 50764-65).  The ALJ noted from an October 2019 medical report that Plaintiff was admitted with depressive symptoms but was discharged in stable condition, and an April 2020 report indicated he asked for assistance with housing as he recently moved from Atlanta and became homeless.  (AR 25-26) (citing Exs. 2F, 11F).  The ALJ noted that Plaintiff

reported taking medication as prescribed but felt sad and down and worried about his current situation, and in June 2020, Plaintiff felt depressed, had anxiety, his wedding canceled due to the pandemic, wanted to go back on his medications, and denied having any suicidal or homicidal thoughts, and was at that time had a mental status examination that was fairly normal.  (AR 26) (citing Ex. 11F).

The ALJ determined from the record that: when Plaintiff is compliant with treatment, his mental status examinations showed he was generally within normal limitations besides sometimes exhibiting an anxious and/or frustrated mood and/or being aggressive and agitated; he has clean speech, logical thought process, normal perceptions, and no suicidal or homicidal ideations; he was cooperative with appropriate mood and effect; he was conservatively treated with routine follow-up examinations, mainly medication reviews and refills and psychotherapy; and that he was doing well.  (*Id.*) (citing Exs. 1F-6F, 11F, 14F).

The ALJ then turned to the medical opinions and prior administrative medical findings of record.  (AR 26-27).  The ALJ found the opinions of counselor Jodi Bowen and treating physician Dr. Patel both unpersuasive because the opinions are brief, conclusory, and inadequately supported by clinical findings.  Counselor Bowen's opinion was discounted because it is an opinion that is not from an acceptable medical source and is not entitled the same weight as a qualifying medical source opinion under 20 CFR 404.1513(a) and (e) and 416.913 (a) and (e).  (AR 26).  Further, Bowen did not opine on what Plaintiff could still do despite finding him unable to work because of his impairments.   The ALJ discounted Dr. Patel's opinion that Plaintiff was unable to work from December 2020 to June 2021 because Dr. Patel did not explain his assessment nor propose any specific functional limitations that would prevent Plaintiff from still working and did not provide an opinion on what Plaintiff could still do despite his impairments.  The ALJ also discounted the opinions of Dr. Patel and Counselor Bowen because the opinions were inconsistent with Plaintiff's admitted activities of daily living.  (AR 26-27).

In determining Plaintiff's mental RFC, the ALJ considered the assessments of State agency psychological consultants on initial review and on reconsideration who opined that Plaintiff is limited to mild to moderate mental functional limitations and found the opinions persuasive as they

were well-supported by the objective medical evidence and are consistent with the overall record, including Plaintiff's ADLs. (AR 27). The ALJ concluded that the assessed RFC is based on all of the relevant evidence in the record and represents what Plaintiff can do on a regular and continuing basis despite his impairments.

At step four, the ALJ determined that Plaintiff is unable to perform any past relevant work based on his documented vocational background, the vocational expert's testimony, and Plaintiff's statements of record. (AR 27). The ALJ found that Plaintiff is a younger individual on the alleged disability onset date pursuant to 20 C.F.R. 404.1563 and 416.963 and has at least a high school education. (AR 27-28). The ALJ determined that using the Medical-Vocational Rules as a framework supports a finding that Plaintiff is not disabled regardless of whether he has transferable job skills. (AR 28) (citing SSR 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2).

At step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff could perform. (AR 28). The ALJ cited to conveyor feeder, machine feeder, and industrial sweeper/cleaner, based on the testimony of the vocational expert. The ALJ therefore concluded a finding of "not disabled" was appropriate. (AR 29).

After the Appeals Council denied review, Plaintiff initiated this action and ultimately filed the instant motion for summary judgment on February 2, 2023. (Doc. 17). Defendant filed an opposition on March 20, 2023. (Doc. 18).

**B.    Medical Record and Hearing Testimony**

The relevant hearing testimony and medical record were reviewed by the Court and will be referenced below as necessary to this Court's decision.

## II.    LEGAL STANDARD

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." (*Id.* at 1159) (quotation and citation omitted). Stated differently, substantial evidence

equates to "more than a mere scintilla[,] but less than a preponderance." (*Id.*) (quotation and citation omitted). "[I]t is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997) (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. (*Id.*).

The court will review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which she did not rely. Social Security Act § 205, 42 U.S.C. § 405(g). In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). Further, a district court will not reverse an ALJ's decision on account of an error that is harmless. (*Id.*). An error is harmless where it is "inconsequential to the [ALJ's] ultimate nondisability determination." (*Id*). (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

A claimant must satisfy two conditions to be considered "disabled" and eligible for benefits within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 416.920(a)(4)(i). If the claimant

is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. (*Id.*).

At step three, the Commissioner compares the claimant's impairment to impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity," defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations (20 C.F.R. § 416.945(a)(1)).

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education, and past work experience. (*Id.*). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20

C.F.R. § 416.920(g)(1). If the claimant is not capable of adjusting to other work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. (*Id.*).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

**III.    ISSUES AND ANALYSIS**

Plaintiff seeks judicial review of the Commissioner's final decision denying his application and asserts the ALJ impermissibly rejected his subjective symptom testimony. (Doc. 17 at 6).

**A.    The Parties' Contentions**

Plaintiff contends the ALJ improperly rejected his subjective symptom testimony regarding his severe impairments of PTSD and major depressive disorder and how these impairments limit and prevent him from performing work activity on a sustained basis. (*Id.*). Plaintiff contends that the ALJ "appears to offer insufficient issues for finding [his] testimony regarding his symptoms not consistent with the record" and did not offer "legally sufficient rationale" such that it is legal error warranting remand. (*Id.* at 9). Plaintiff asserts the ALJ's discussion of the objective medical evidence, without more, "is insufficient to reject the testimony" as the ALJ "nowhere connects" any of Plaintiff's testimony to "parts of the record supporting the ALJ's decision[.]" (*Id.* at 10). As to Plaintiff's activities of daily living, he asserts that the ALJ erred in finding Plaintiff's activities suggest that he is not as limited as he describes because nothing in the record "or in the decision indicates that he is capable of maintaining substantial gainful work activity." (*Id.* at 12). According to Plaintiff, his "sporadic activities as described in his testimony or in [the] record … do not contradict his testimony nor do they demonstrate" transferrable skills to a "full-time work setting." (*Id.* at 12, 13). He further contends that the vocational expert testified that his activities "are not consistent with full time employment." (*Id.* at 13). Plaintiff argues the ALJ improperly isolates and mischaracterizes the record on review of Plaintiff's daily activities and in rejecting his testimony. (*Id.*). Lastly, Plaintiff contends the ALJ erroneously referred to his daily activities and

1    concluded that they were inconsistent with his claimed disability.  (*Id.* at 17).

2         Defendant contends the ALJ properly evaluated his alleged symptoms and sufficiently

3    explained their inconsistency with the record based on Plaintiff's normal mental status examination

4    findings, stable condition with treatment, and the findings of two doctors that his impairments were

5    not disabling.  (Doc. 18 at 4).  Defendant asserts that the ALJ properly evaluated his subjective

6    symptom allegations and provided several valid reasons for finding them inconsistent with the

7    objective medical evidence and other evidence in the record, including his positive response to

8    largely conservative treatment and reported daily activities.  (*Id.* at 5).  As to the inconsistency of

9    Plaintiff's alleged symptoms, Defendant points to the ALJ's consideration of evidence of positive

10   clinical findings showing Plaintiff sought mental health treatment for depression, anxiety, and

11   PTSD.  (*Id.* at 6).  Defendant asserts the ALJ properly considered objective findings in discounting

12   Plaintiff's mental symptoms, including in noting that evidence both supported and detracted from

13   the subjective allegations of disabling symptoms and that on balance, the objective findings did not

14   fully support the extent of the alleged debilitation.  (*Id.* at 7).  Defendant contends Plaintiff fails to

15   challenge the ALJ's rationale for discounting his allegations based on conservative treatment,

16   medication, and the ALJ's reliance upon two administrative medical findings.  (*Id.* at 8).  Defendant

17   argues the ALJ reasonably found that Plaintiff's allegations were inconsistent with his reported

18   activities and therefore the ALJ did not err in discounting that contradicted testimony.  (*Id.* at 11).

19        **B.**    **Governing Authority**

20        "In step two of the disability determination, an ALJ must determine whether the claimant

21   has a medically severe impairment or combination of impairments."  *Keyser v. Comm'r of Soc. Sec.*

22   *Admin.,* 648 F.3d 721, 725 (9th Cir. 2011).  A claimant has a severe impairment when the evidence

23   establishes that an impairment has more than a minimal effect on an individual's ability to perform

24   basic work activities.  *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005); *Smolen v. Chater*, 80

25   F.3d 1273, 1290 (9th Cir. 1996); 20 C.F.R. §§ 404.1522(a), 416.922(a) ("An impairment or

26   combination of impairments is not severe if it does not significantly limit your physical or mental

27   ability to do basic work activities.").  The regulations define "basic work activities" as "the abilities

28   and aptitudes necessary to do most jobs," which include physical functions such as walking,

standing, sitting, pushing, and carrying, and mental functions such as understanding and remembering simple instructions; responding appropriately in a work setting; and dealing with changes in a work setting.  20 C.F.R. §§ 404.1522(b), 416.922(b).

The ALJ is responsible for determining credibility,[5] resolving conflicts in medical testimony, and resolving ambiguities.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  A claimant's statements of pain or other symptoms are not conclusive evidence of a physical or mental impairment or disability.  42 U.S.C. § 423(d)(5)(A); *see* SSR 16-3p, 2017 WL 5180304, at *2 ("an individual's statements of symptoms alone are not enough to establish the existence of a physical or mental impairment or disability"); *see also Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007) ("An ALJ is not required to believe every allegation of disabling pain or other non-exertional impairment.") (internal quotation marks and citation omitted); *Molina v. Astrue*, 674 F.3d 1104, 1104 (9th Cir. 2012) (same), *superseded on other grounds by* 20 C.F.R. § 404.1502(a). Determining whether a claimant's testimony regarding subjective pain or symptoms is credible requires the ALJ to engage in a two-step analysis.  (*Id.* at 1112).  The ALJ must first determine if "the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (internal punctuation and citations omitted).  This does not require the claimant to show that his impairment could be expected to cause the severity of the symptoms that are alleged, but only that it reasonably could have caused some degree of symptoms. *Smolen*, 80 F.3d at 1282.

If the first step is met and there is no evidence of malingering, "the ALJ must provide 'specific, clear and convincing reasons for' rejecting the claimant's testimony."  *Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1102 (9th Cir. 2014) (*quoting Smolen*, 80 F.3d at 1281).  *See Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1160 (9th Cir. 2008) (noting an adverse

---

[5] SSR 16-3p applies to disability applications heard by the agency on or after March 28, 2016. Ruling 16-3p eliminated the use of the term "credibility" to emphasize that subjective symptom evaluation is not "an examination of an individual's character but an endeavor to "determine how symptoms limit [the] ability to perform work-related activities." SSR 16-3p, 2017 WL 5180304, at *3.

credibility finding must be based on "clear and convincing reasons"). The ALJ must make findings that support this conclusion, and the findings must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony. *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004).

The Ninth Circuit does "not require ALJs to perform a line-by-line exegesis of the claimant's testimony, nor do they require ALJs to draft dissertations when denying benefits." *Stewart v. Kijakazi*, No. 1:22-cv-00189-ADA-HBK, 2023 WL 4162767, at *5 (E.D. Cal. Jun. 22, 2023), *findings and recommendations adopted*, 2023 WL 5109769 (Aug. 8, 2023); *see Record v. Kijakazi*, No. 1:22-cv-00495-BAM, 2023 WL 2752097, at *4 (E.D. Cal. Mar. 31, 2023) ("Even if the ALJ's decision is not a model of clarity, where the ALJ's 'path may reasonably be discerned,' the Court will still defer to the ALJ's decision.") (*quoting Wilson v. Berryhill*, 757 Fed. Appx. 595, 597 (9th Cir. 2019)). "The standard isn't whether our court is convinced, but instead, whether the ALJ's rationale is clear enough that it has the power to convince." *Smartt v. Kijakazi*, 53 F.4th 489, 494 (9th Cir. 2022) (the clear and convincing standard requires an ALJ to show his work).

The ALJ may consider numerous factors in weighing a claimant's credibility, including "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Smolen*, 80 F.3d at 1284. In evaluating the credibility of symptom testimony, the ALJ must also consider the factors identified in SSR 16-3P. (*Id.*) (citing *Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991)). Accord *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226 (9th Cir. 2009). These factors include:

> (1) Daily activities; (2) The location, duration, frequency, and intensity of pain or other symptoms; (3) Factors that precipitate and aggravate the symptoms; (4) The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; (5) Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; (6) Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (*e.g.*, lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) Any other factors

1    concerning an individual's functional limitations and restrictions due to pain or

2    other symptoms.

3    SSR 16-3P, 2017 WL 5180304, at *7.  *See* 20 C.F.R. § 404.1529(c)(3). If the ALJ's finding is

4    supported by substantial evidence, the court may not engage in second-guessing. *Tommasetti*, 533

5    F.3d at 1039 (citations and internal quotation marks omitted).

6    The clear and convincing standard is "not an easy requirement to meet," as it is "'the most

7    demanding requirement in Social Security cases.'"  *Garrison v. Colvin,* 759 F.3d 995, 1015 (9th

8    Cir. 2014) (*quoting Moore v. Comm'r of Soc. Sec. Admin*., 278 F.3d 920, 924 (9th Cir. 2002)). "A

9    finding that a claimant's testimony is not credible must be sufficiently specific to allow a reviewing

10   court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did

11   not arbitrarily discredit a claimant's testimony regarding pain." *Brown-Hunter v. Colvin*, 806 F.3d

12   487, 493 (9th Cir. 2015) (citation and internal quotation marks omitted).

13   "The fact that a claimant's testimony is not fully corroborated by the objective medical

14   findings, in and of itself, is not a clear and convincing reason for rejecting it." *Vertigan v. Halter,*

15   260 F.3d 1044, 1049 (9th Cir. 2001).  *See* 20 C.F.R. § 404.1529(c)(2) ("[W]e will not reject your

16   statements about the intensity and persistence of your pain or other symptoms or about the effect

17   your symptoms have on your ability solely because the objective medical evidence does not

18   substantiate your statements."). Rather, where a claimant's symptom testimony is not fully

19   substantiated by the objective medical record, the ALJ must provide additional reasons for

20   discounting the testimony. *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). "The ALJ must

21   specify what testimony is not credible and identify the evidence that undermines the claimant's

22   complaints – '[g]eneral findings are insufficient.'" (*Id.*) (*quoting Reddick v. Chater*, 157 F.3d 715,

23   722 (9th Cir. 1998)).

24   However, the medical evidence "is still a relevant factor in determining the severity of the

25   claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

26   The Ninth Circuit has distinguished testimony that is "uncorroborated" by the medical evidence

27   from testimony that is "contradicted" by the medical records and concluded that contradictions with

28   the medical records, by themselves, are enough to meet the clear and convincing standard.

1    *Hairston v. Saul*, 827 Fed. Appx. 772, 773 (9th Cir. 2020) (*quoting Carmickle*, 533 F.3d at 1161).

2    **C.    Analysis**

3    The ALJ found that Plaintiff's severe impairments—PTSD and major depressive disorder—

4    significantly limit him from performing basic work activities.  (AR 22).  The ALJ summarized

5    Plaintiff's subjective symptom testimony from the hearing (AR 24), as set forth above in Section

6    I(A).  After finding that Plaintiff's impairments could reasonably be expected to cause some of his

7    alleged symptoms, the ALJ concluded that Plaintiff's statements concerning the intensity,

8    persistence, and limiting effects of her symptoms are not entirely consistent with the record.  (AR

9    25); *see Treichler*, 775 F.3d at 1103 (noting that ALJs "routinely include this [boilerplate] statement

10   in their written findings as an introduction ... before [identifying] what parts of the claimant's

11   testimony were not credible and why.").

12   The ALJ identified her reasons for discounting Plaintiff's symptom allegations.   For

13   example, the ALJ properly cited to Plaintiff's positive response to generally conservative treatment

14   and normal mental status examination findings (AR 26).  *See Smartt*, 53 F.3d at 500 ("The ALJ did

15   not err in concluding that such ongoing conservative treatment and overall improvement are

16   inconsistent with Smartt's testimony as to the severity of her impairments."); *Tommasetti*, 533 F.3d

17   at 1039-40 (ALJ may draw "permissible inference" that pain is not as disabling as claimed where

18   plaintiff does not seek an aggressive treatment program).  Plaintiff does not acknowledge in either

19   his motion or any reply to Defendant's opposition the ALJ's reliance on this basis for discounting

20   Plaintiff's symptomology testimony.  *See generally* (Doc. 17).  Likewise, Plaintiff fails to address

21   the ALJ's proper consideration of two administrative medical findings in determining that

22   Plaintiff's subjective symptomology testimony was not credible.  (*Id.*). *See Stubbs-Danielson v.*

23   *Astrue*, 539 F.3d 1169, 1175 (9th Cir. 2008) ("the medical evidence, including Dr. Eather's report

24   and Dr. Neville's report—which both found Stubbs–Danielson could perform a limited range of

25   work—support the ALJ's credibility determination.").

26   The ALJ also cited to and relied on Plaintiff's reported daily activities:

27   [Plaintiff] stated he lives in a shelter and [he could] do some chores; sit on a chair
     around the table; take naps; eat independently; take his medications independently;

28

15

1
2
3

> somewhat maintain his personal care; do laundry; take out the trash; sweep; go outside; walk; go out alone; drive; shop by computer for clothing, food, and toiletries; manage his own finances; watch television; play video games; listen to music; and spend time with others on the phone and text.

4  (AR 23) (citing Ex. 9E).  The ALJ determined that Plaintiff's ADLs suggest he is more than capable

5  in his ability with talking, remembering, completing tasks, concentrating, and getting along with

6  others than he alleged and "are consistent with the functional limitations" as assessed by the ALJ.

7  (AR 24).  For example, though Plaintiff testified he had issues focusing, the ALJ found his daily

8  activities of driving, shopping online, managing finances, and playing video games required the

9  ability to focus.  Thus, the ALJ properly discounted Plaintiff's testimony in finding it inconsistent

10  with his daily activities.  *See Smartt*, 53 F.4th at 499–500 ("An ALJ may also consider 'whether

11  the claimant engages in daily activities inconsistent with the alleged symptoms.'") (citation

12  omitted).

13      The Court finds the ALJ sufficiently explained her reasons for discounting Plaintiff's

14  symptom testimony based on evidence in the record.  The Court can readily follow her reasoning

15  and meaningfully review those reasons.  *See, e.g., Guthrie v. Kijakazi*, No. 21-36023, 2022 WL

16  15761380, at *1 (9th Cir. Oct. 28, 2022) (citing *Kaufmann v. Kijakazi*, 32 F.4th 843, 851 (9th Cir.

17  2022) (stating that the court considers "the ALJ's full explanation" and the "entire record")); *Mazon*

18  *v. Comm'r of Soc. Sec.*, No. 1:22-cv-00342-SAB, 2023 WL 3177797, at *7 (E.D. Cal. May 1, 2023)

19  (the ALJ's sequence of summarizing evidence followed by giving specific findings followed a

20  conventional organization for the ALJ's decision writing which is sufficiently clear for judicial

21  review).

22      Overall, the ALJ credited Plaintiff's testimony and provided specific, clear, and convincing

23  reasons for the portions of Plaintiff's testimony she discounted.  Substantial evidence supports the

24  ALJ's decision such that it must be affirmed.

## IV.    CONCLUSION AND ORDER

25

26      For the reasons set for above, IT IS HEREBY ORDERED that:

27      1.    Plaintiff's motion for summary judgment (Doc. 17) is **DENIED**;

28      2.    Defendant's cross-motion for summary judgment (Doc. 18) is **GRANTED**;

3.    The ALJ's decision is affirmed; and

4.    The Clerk of the Court is **DIRECTED** to enter judgment in favor of Defendant and close this case.

IT IS SO ORDERED.

Dated:   **May 27, 2025**

_____
UNITED STATES MAGISTRATE JUDGE